**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**EMELIA LOCK**, an individual,

Plaintiff,

v.

**CITY OF FORT MYERS**,

Defendant.

**CIVIL ACTION**

**Case No. 2:26-cv-2750**

**Judge:**

**Mag. Judge:**

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, EMELIA LOCK ("LOCK" or "Plaintiff"), by and through undersigned counsel, and states the following for her Complaint:

## CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA") for: (1) sex/gender discrimination in violation of Title VII; (2) sex, gender, and pregnancy discrimination in violation of the FCRA; (3) retaliation in violation of Title VII; and (4) retaliation in violation of the FCRA.

## PARTIES

2. Plaintiff, EMELIA LOCK, is an individual who was employed by Defendant in Lee County, Florida. LOCK is female.

3. Defendant, CITY OF FORT MYERS, is a public employer that employed LOCK in Lee County, Florida.

4. At all material times, Defendant employed more than fifteen employees.

5. Defendant is an employer within the meaning of Title VII and the FCRA.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over LOCK's federal claims under 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over LOCK's state law claims under 28 U.S.C. § 1367.

8. Venue is proper in the United States District Court for the Middle District of Florida because Defendant conducts business in Lee County, Florida, and some or all of the events giving rise to LOCK's claims occurred in Lee County, Florida. Venue is proper in the Fort Myers Division because Lee County is within the Fort Myers Division.

9. LOCK received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission on July 21, 2026, concerning Charge No. 510-2025-13127, and the Notice advised that any lawsuit under federal law must be filed within ninety days of receipt. A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.

## GENERAL ALLEGATIONS

10. LOCK is female and has been employed with the Fort Myers Police Department since 2015.

11. In or about November 2019, LOCK transferred to the Metro Drug Unit and worked as the only female detective among four detectives under Sergeant Scott Newbury.

12. LOCK became pregnant in December 2020 and continued performing her normal job duties, including investigations, undercover operations, search warrants, depositions, and court hearings.

13. LOCK's work productivity was not affected by her pregnancy, and she did not miss work because of her pregnancy.

14. LOCK took FMLA leave beginning in August 2021.

15. After returning from FMLA leave for the birth of her child, LOCK reported that she was treated differently, managed differently, and subjected to conduct she believed was discriminatory and retaliatory.

16. Shortly after LOCK returned from leave, Sergeant Newbury commented in a group setting that LOCK could not complain because she had just returned from "vacation."

17. In approximately December 2021, Sergeant Newbury asked LOCK whether having a new baby was going to affect her ability to perform her job.

18. LOCK asked a male detective who had recently had a baby whether he had been questioned the same way about his ability to perform his job after returning from leave, and he denied being questioned in the same manner.

19. NETFORCE Commander Frank Ashline also asked LOCK whether having a baby was affecting her job performance.

20. In approximately February 2022, Sergeant Newbury again questioned LOCK about her work performance and ability to handle the work hours, and LOCK explained that the repeated questioning from Newbury and Ashline was causing her stress and anxiety.

21. LOCK asked several colleagues whether there was an issue with her performance, and they denied raising any concerns about her job performance to Sergeant Newbury or Commander Ashline.

22. LOCK continued performing her work, including participating in a three-day surveillance trip to Michigan in March 2022 despite having a baby at home.

23. In or about an April 2022 meeting with Lieutenant Walter Mitchell and Sergeant Newbury, LOCK explained that, since returning from FMLA leave, she had been subjected to constant questioning and felt discriminated against for having a child; Newbury denied the conduct and yelled at her.

24. Captain Mitchell later recalled telling Sergeant Newbury to accommodate LOCK if needed.

25. A few days later, LOCK was informed she would be removed from the Metro Drug Unit/NETFORCE assignment, was told the decision came from the State Attorney, and was offered Patrol, SRO, or Narcotics; LOCK chose Narcotics.

26. LOCK was removed from her position under Newbury after she brought the situation involving Newbury to the Department's attention.

27. From 2022 through 2025, LOCK was passed over for three career-advancing opportunities under Captain Michael Walsh and was also passed over for Sergeant positions while on a two-year promotional list.

28. The missed career-advancing opportunities included the FBI Task Force Officer position in 2022, the DEA Task Force Officer position in 2024, and the HSI INTERCEPT Task Force Officer position in 2024.

29. Defendant's records reflect that LOCK interviewed for the FBI Task Force Officer position in May 2022, but Detective Rochelle Curr was selected.

30. Defendant's records reflect that LOCK was considered for the DEA Task Force Officer position in 2024, but Kady Kahrig was selected.

31. Human Resources records reflected no formal recruitments for the FBI Task Force Officer position, DEA Task Force Officer position, or HSI Intercept Task Force Officer position.

32. Defendant's records further reflected that no memos were generated about the selection decisions and that there were no supporting documents available.

33. LOCK reported that no male detectives were asked whether their family status hindered their ability to perform their job duties.

34. LOCK delayed coming forward because she feared retaliation due to Newbury's relationships with individuals in positions of authority.

35. In April 2025, LOCK reported ongoing retaliation stemming from her removal from the Metro Drug Unit and NETFORCE Task Force, requested to contact Human Resources, and on April 8, 2025 provided a written complaint to Human Resources Coordinator Amber Colon while asking that her complaint not be shared with Captain Walsh because he was named in the grievance and was a close personal friend of Newbury.

36. Despite LOCK's confidentiality request, Captain Walsh was made aware of the complaint and shared details of the complaint inside and outside the Department.

37. On May 8, 2025, LOCK met with Chief Jason Fields, reported the discrimination she experienced in the Metro Drug Unit, raised concerns about

Captain Walsh's breach of confidentiality, and explained her belief that Newbury manipulated command staff to discredit her and remove her after she complained about discrimination.

38. LOCK also reported favoritism in specialized assignments overseen by Captain Walsh and stated that she had been passed over for three opportunities for which she was fully qualified.

39. Chief Fields refused to consider LOCK's return to the Metro Drug Unit, stated he would not "resurrect" matters involving Newbury because Newbury had retired, told LOCK that if she was unhappy in her unit or position there were others waiting to take her place and that she could go "elsewhere," and stated that her position was "temporary" and could be changed at any time.

40. Human Resources later presented findings based on interviews with Captain Walsh and Captain Mitchell, did not interview LOCK's named witnesses, did not reach out to the State Attorney's Office, and relied on input from individuals with personal ties to Newbury.

41. LOCK consistently received positive performance evaluations and maintained a strong work ethic.

42. LOCK resigned effective October 10, 2025, and alleged that her resignation constituted a constructive discharge resulting from a hostile work environment, harassment, and retaliation.

43. At or near the end of her employment, LOCK's year-to-date gross pay was $77,043.07 as of the September 11, 2025 through September 24, 2025 pay period.

44. After separation, LOCK obtained new employment as a Process Loan Officer at $23.11 per hour plus some bonus.

45. Defendant has violated Title VII and the FCRA.

**COUNT I - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (SEX/GENDER DISCRIMINATION)**

46. Plaintiff incorporates by reference Paragraphs 1 through 45 as though fully set forth herein.

47. LOCK is female and, as such, is a member of a protected class.

48. At all material times, LOCK was an employee and Defendant was her employer covered by and within the meaning of Title VII, including 42 U.S.C. § 2000e et seq.

49. LOCK was qualified for the positions she held with Defendant.

50. LOCK performed her job duties satisfactorily and maintained positive performance reviews.

51. LOCK was subjected to disparate treatment because of her sex, gender, pregnancy, maternity leave, and status as a mother.

52. Defendant, by and through its agents, supervisors, and decisionmakers, treated LOCK differently from similarly situated male

employees, including by questioning her ability to perform her job after childbirth and FMLA leave, scrutinizing her family responsibilities, denying career-advancing opportunities, and removing her from the Metro Drug Unit/NETFORCE assignment.

53. Defendant's acts, omissions, practices, and policies constitute intentional discrimination on the basis of sex and gender in violation of Title VII, including 42 U.S.C. § 2000e-2.

54. As a direct and proximate result of Defendant's unlawful conduct, LOCK lost benefits and privileges of employment and was substantially and significantly injured in her career path.

55. As a direct and proximate result of Defendant's unlawful conduct, LOCK suffered damages, including but not limited to lost employment opportunities, lost past and future wages, lost overtime, lost benefits, humiliation, mental anguish, emotional distress, and other compensatory damages.

56. LOCK exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and demands judgment against Defendant for:

i. Back pay and all other benefits, perquisites, and compensation Plaintiff would have received absent Defendant's unlawful conduct, plus interest, including but not limited to lost salary, overtime, and bonuses;

ii. Front pay, including raises, benefits, insurance costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff incurred as a result of Defendant's actions;

iv. Compensatory damages;

v. Reasonable attorney's fees and costs; and

vi. Such other relief as this Court deems just and proper.

**COUNT II - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 (SEX, GENDER, AND PREGNANCY DISCRIMINATION)**

57. Plaintiff incorporates by reference Paragraphs 1 through 45 as though fully set forth herein.

58. LOCK is female and was pregnant and/or recently returned from childbirth-related leave during relevant events.

59. At all material times, LOCK was an employee and Defendant was her employer covered by and within the meaning of the FCRA.

60. LOCK was qualified for the positions she held with Defendant.

61. LOCK was subjected to disparate treatment because of her sex, gender, pregnancy, maternity leave, and status as a mother.

62. Defendant's acts, omissions, practices, and policies constitute intentional discrimination in violation of the FCRA, including Fla. Stat. § 760.10.

63. As a direct and proximate result of Defendant's unlawful conduct, LOCK lost benefits and privileges of employment and was substantially and significantly injured in her career path.

64. As a direct and proximate result of Defendant's unlawful conduct, LOCK suffered damages, including but not limited to lost employment opportunities, lost past and future wages, lost overtime, lost benefits, humiliation, mental anguish, emotional distress, and other compensatory damages.

65. LOCK exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and demands judgment against Defendant for:

i. Back pay and all other benefits, perquisites, and compensation Plaintiff would have received absent Defendant's unlawful conduct, plus interest, including but not limited to lost salary, overtime, and bonuses;

ii. Front pay, including raises, benefits, insurance costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff incurred as a result of Defendant's actions;

iv. Compensatory damages;

v. Reasonable attorney's fees and costs; and

vi. Such other relief as this Court deems just and proper.

**COUNT III - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (RETALIATION)**

66. Plaintiff incorporates by reference Paragraphs 1 through 45 as though fully set forth herein.

67. LOCK engaged in protected activity by complaining about discrimination, harassment, retaliation, disparate treatment, and the denial of fair employment opportunities.

68. Defendant knew of LOCK's protected activity.

69. After LOCK engaged in protected activity, Defendant subjected her to materially adverse actions, including but not limited to removing her from the Metro Drug Unit/NETFORCE assignment, denying career-advancing opportunities, denying promotional opportunities, breaching confidentiality regarding her HR complaint, failing to conduct a fair and impartial investigation, threatening or warning her that she could be removed from her position if she continued to complain, and constructively discharging her.

70. Defendant's materially adverse actions were causally connected to LOCK's protected activity.

71. Instead of preventing retaliation, Defendant retaliated against LOCK and allowed retaliatory conduct to continue.

72. Defendant's acts, omissions, practices, and policies constitute retaliation in violation of Title VII, including 42 U.S.C. § 2000e-3.

73. As a direct and proximate result of Defendant's unlawful retaliation, LOCK lost benefits and privileges of employment and was substantially and significantly injured in her career path.

74. As a direct and proximate result of Defendant's unlawful retaliation, LOCK suffered damages, including but not limited to lost employment opportunities, lost past and future wages, lost overtime, lost benefits, humiliation, mental anguish, emotional distress, and other compensatory damages.

75. LOCK exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and demands judgment against Defendant for:

i. Back pay and all other benefits, perquisites, and compensation Plaintiff would have received absent Defendant's unlawful conduct, plus interest, including but not limited to lost salary, overtime, and bonuses;

ii. Front pay, including raises, benefits, insurance costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff incurred as a result of Defendant's actions;

iv. Compensatory damages;

v. Reasonable attorney's fees and costs; and

vi. Such other relief as this Court deems just and proper.

**COUNT IV - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 (RETALIATION)**

76. Plaintiff incorporates by reference Paragraphs 1 through 45 as though fully set forth herein.

77. LOCK engaged in protected activity by complaining about discrimination, harassment, retaliation, disparate treatment, and the denial of fair employment opportunities.

78. Defendant knew of LOCK's protected activity.

79. After LOCK engaged in protected activity, Defendant subjected her to materially adverse actions, including but not limited to removing her from the Metro Drug Unit/NETFORCE assignment, denying career-advancing opportunities, denying promotional opportunities, breaching confidentiality regarding her HR complaint, failing to conduct a fair and impartial

investigation, threatening or warning her that she could be removed from her position if she continued to complain, and constructively discharging her.

80. Defendant's materially adverse actions were causally connected to LOCK's protected activity.

81. Instead of preventing retaliation, Defendant retaliated against LOCK and allowed retaliatory conduct to continue.

82. Defendant's acts, omissions, practices, and policies constitute retaliation in violation of the FCRA, including Fla. Stat. § 760.10.

83. As a direct and proximate result of Defendant's unlawful retaliation, LOCK lost benefits and privileges of employment and was substantially and significantly injured in her career path.

84. As a direct and proximate result of Defendant's unlawful retaliation, LOCK suffered damages, including but not limited to lost employment opportunities, lost past and future wages, lost overtime, lost benefits, humiliation, mental anguish, emotional distress, and other compensatory damages.

85. LOCK exhausted her administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and demands judgment against Defendant for:

i. Back pay and all other benefits, perquisites, and compensation Plaintiff would have received absent Defendant's unlawful conduct, plus interest, including but not limited to lost salary, overtime, and bonuses;

ii. Front pay, including raises, benefits, insurance costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff incurred as a result of Defendant's actions;

iv. Compensatory damages;

v. Reasonable attorney's fees and costs; and

vi. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, EMELIA E. LOCK, by and through undersigned counsel, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: October 7, 2026

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691

Fax: (239) 288-2534
Email: byormak@yormaklaw.com